IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
        **Plaintiff,**

    **vs.**                                    **Cr. No. 11-1528**

CLAY O'BRIEN MANN,
        **Defendant.**

## MEMORANDUM ORDER AND OPINION

On July 26, 2013, Defendant, Clay O'Brien Mann, moved to arrest judgment on two

convictions that resulted from his jury trial.[1] DEFENDANT'S MOTION TO ARREST JUDGMENT

(Doc. No. 119) (Motion to Arrest). Defendant seeks relief from convictions of discharging a firearm

during a crime of violence in violation of 18 U.S.C. § 924 (c)(1)(A) as charged in Count 2 and Count

5 of the Indictment. The Government opposes Defendant's Motion to Arrest. UNITED STATES'

RESPONSE TO MOTION TO ARREST JUDGMENT (Doc. No. 129) (Response). The Court will

grant the motion in part by vacating the conviction as to Count 2 and will deny the motion as to

Count 5.

## BACKGROUND

**A. The Jury Trial**

On June 7, 2011, a grand jury returned an eight-count Indictment charging Defendant with:

(1) first degree murder for shooting Mr. Ames Jim; (2) discharging a firearm during a crime of

violence (the crime of violence being first degree murder as charged in Count 1); (3) assault with

intent to do serious bodily injury for shooting Ms. Paula Nez; (4) assault resulting in serious bodily

---

[1] The verdict was entered on July 12, 2013. *See* REDACTED VERDICT AS TO COUNT ONE
(Doc. No. 117); REDACTED VERDICT AS TO COUNTS TWO, THREE, FOUR, FIVE, SIX,
SEVEN AND EIGHT (Doc. No. 118).

injury for shooting Ms. Paula Nez; (5) discharging a firearm during a crime of violence (the crime of

violence being the assault charged in Count 4); (6) assault with intent to do serious bodily injury for

shooting Mr. Mark Bolding; (7) assault resulting in serious bodily injury for shooting Mr. Mark

Bolding; and (8) discharging a firearm during a crime of violence (the crime of violence being

assault resulting in serious bodily injury as charged in Count 6). REDACTED INDICTMENT (Doc.

No. 33). The charges arose from a July 24, 2010 shooting incident.

On July 8, 2013, the case proceeded to trial. On July 12, 2013, during jury deliberations, the

jury sent the Court questions, which reflected confusion about Count 8 of the Indictment. It became

clear that Count 8 was written incorrectly; it referred to "assault resulting in serious bodily injury as

charged in Count 6," which was confusing because the assault resulting in serious bodily injury was

charged in Count 7. Because of the defect and the resulting confusion, the Court dismissed Count 8

without prejudice.

After further deliberation, the jury convicted Defendant on five of the remaining seven

counts: (1) involuntary manslaughter, a lesser included offense of first degree murder; (2)

discharging a firearm in relation to a crime of violence (the crime of violence being involuntary

manslaughter); (3) assault resulting in serious bodily injury for shooting Ms. Paula Nez; (4)

discharging a firearm in relation to a crime of violence (the crime of violence being assault resulting

in serious bodily injury for shooting Ms. Paula Nez); and (5) assault resulting in serious bodily injury

for shooting Mr. Mark Bolding. REDACTED VERDICT AS TO COUNT ONE (Doc. No. 117);

REDACTED VERDICT AS TO COUNTS TWO, THREE, FOUR, FIVE, SIX, SEVEN AND

EIGHT (Doc. No. 118). The jury acquitted Defendant of both counts (3 and 6) of assault with intent

to do serious bodily injury. In addition, the jury acquitted Defendant of first degree murder, second

degree murder, and voluntary manslaughter. *Id.*

2

**B. The Jury Instructions**

Prior to jury deliberations, the Court instructed the jury on the elements of each offense. In Jury Instruction No. 10, the Court explained Count 2 of the Indictment. *See* COURT'S JURY INSTRUCTIONS AS TO CLAY O'BRIEN MANN (Doc. No. 99) (Jury Instructions). The instruction states, in relevant part:

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First:    the defendant committed either the crime of first degree murder, as charged in count 1 of the Indictment, or that the defendant committed second degree murder, voluntary manslaughter, or involuntary manslaughter. You are instructed that any of these crimes is a crime of violence.
>
> Second:    the defendant used or carried a firearm;
>
> Third:    during and in relation to first degree murder, as charged in count 1 of the Indictment, or that the defendant committed second degree murder, voluntary manslaughter, or involuntary manslaughter.

The Court defined "using" a firearm as having the firearm "readily accessible" and actively employing the firearm. It informed the jury that the lesser included offenses of first degree murder, including involuntary manslaughter, are crimes of violence under 18 U.S.C. § 924.

In Jury Instruction No. 13, the Court explained Count 5 of the Indictment. Like Jury Instruction No. 10, Jury Instruction No. 13 informed the jury that it should convict on Count 5 of the Indictment if the Defendant "used or carried a firearm" during and in relation to the crime of violence.

The language of the verdict form completed by the jury differed from the language in the jury instructions. The verdict form allowed the jury to convict the Defendant of "discharging a firearm" in furtherance of an act of violence. REDACTED VERDICT AS TO COUNTS TWO, THREE, FOUR, FIVE, SIX, SEVEN AND EIGHT (Doc. No. 118).

**DISCUSSION**

**A. Standard of Review − Plain Error**

Defendant presents two arguments: (1) the Court should arrest judgment on Count 2 because involuntary manslaughter is not a crime of violence, and (2) the Court should arrest judgment on Counts 2 and 5 because the jury was not instructed that discharging a firearm was an element of the offense.[2] Defendant's arguments stem from alleged errors in the jury instructions. The Court instructed the jury that involuntary manslaughter was a crime of violence and could support a conviction under 18 U.S.C. § 924 (c)(1). In addition, the Court did not instruct the jury on discharging a firearm, although the verdict form allowed the jury to convict the Defendant for discharging a firearm. Defendant did not object to the jury instructions at trial.

Failure to timely object to a jury instruction generally "precludes appellate review." FED. R. CRIM. P. 30 (an objection to a jury instruction must be entered "before the jury retires to deliberate"). However, a defendant who fails to preserve an error is entitled to relief if he can establish plain error. *Id.*; FED. R. CRIM. P. 52(b). The Supreme Court has confirmed that plain error review is the appropriate standard when a jury instruction omits an element of the offense and the defendant fails to object to the instruction at trial. *See Neder v. United States*, 527 U.S. 1, 8-9 (1999) (failing to submit an element to the jury is not structural error and does not require reversal if it is harmless) (citing *Johnson v. United States*, 520 U.S. 461 (1997)); *see also United States v. Clifton*, 127 F.3d 969, 970 (10th Cir. 1997) (reviewing a district court decision not to submit an element of the offense to the jury under the plain error standard). Here, Mr. Mann claims that (1) the Court committed a legal error when it listed the elements of Count 2, and (2) the Court failed to instruct the jury on the

---

[2]To remedy the two errors, Defendant alternatively seeks a judgment of acquittal under Federal Rule of Criminal Procedure 29. DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND TO ARREST JUDGMENT (Doc. No. 132).

elements of Count 2 and Count 5. Plain error review is appropriate.

Plain error occurs when (1) the district court committed error, (2) the error was plain, (3) the error affects the defendant's substantial rights, and (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Teague*, 443 F.3d 1310, 1318-19 (10th Cir. 2006). An error that affects the defendant's substantial rights involves "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (citations omitted). Plain error analysis is conducted "less rigidly" when reviewing a constitutional error. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005).

**B. Defendant's First Argument (Involuntary Manslaughter is Not a Crime of Violence)**

**1. 18 U.S.C. § 924 (c)'s Definition of a Crime of Violence**

Title 18 U.S.C. § 924 criminalizes using a firearm during and in relation to a "crime of violence." It defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924 (c)(3).

The definition of crime of violence found in § 924 does not explicitly exclude unintentional conduct; there is no reference to *mens rea*. However, the most natural reading of § 924 "suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).[3] "Interpreting [a crime of violence] to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Id.* at 11.

---

[3]In *Leocal*, the Supreme Court discussed the definition of crime of violence found in 18 U.S.C. § 16. Section 924 contains the same definition as § 16.

In *Leocal*, the Supreme Court held that the word "use" in the definition of crime of violence requires "active employment." *Id.* at 9. Because one "would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him," the Court cannot label an offense a "crime of violence" if the force resulting from the offender's conduct was merely accidental. *Id.*

Accidental conduct includes reckless conduct. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) ("In light of the persuasive reasoning of our sister circuits, we are convinced that recklessness falls into the category of accidental conduct that the *Leocal* Court described as failing to satisfy the use of physical force requirement under either of § 16's definitions of 'crime of violence.'"). "[O]nly those crimes with a mens rea of intent or purpose qualify as crimes of violence." *United States v. Armijo*, 651 F.3d 1226, 1234 (10th Cir. 2011).

### 2. Involuntary Manslaughter is not a Crime of Violence

To convict a defendant of involuntary manslaughter under 18 U.S.C. § 1112, the Government "need not prove that the defendant specifically intended to cause the death of the victim." Instead, it must prove that the defendant acted with "gross negligence amounting to wanton and reckless disregard for human life." Tenth Circuit Pattern Jury Instruction 2.54.1 (paraphrasing *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)). Involuntary manslaughter does not demand the requisite *mens rea* to be a crime of violence. *See Zuniga-Soto*, 527 F.3d at 1124; *Armijo*, 651 F.3d at 1234.[4]

The Government seeks to avoid this conclusion by distinguishing *Zuniga-Soto* and *Armijo*. It points out that neither *Zuniga-Soto* nor *Armijo* directly involves the crime of violence definition

---

[4] The Government cites *United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993) to support its claim that involuntary manslaughter is a crime of violence. In *Lujan*, which was decided prior to *Leocal*, the Tenth Circuit held that manslaughter was a "violent felony" under 18 U.S.C. § 924(e). Not only has *Leocal* cast serious doubt on the continued validity of *Lujan*, *United States v. Bedonie*, 413 F.3d 1126, 1130 (10th Cir. 2005), the Tenth Circuit has not cited or relied on *Lujan* in its recent decisions interpreting the definition of crime of violence.

contained in § 924. Response at 21-22. Crime of violence is defined in numerous sections of the U.S. Code and U.S. Sentencing Guidelines. The various definitions of "crime of violence" share similarities, but differ in exact language. In addition, the Government notes that neither case deals with involuntary manslaughter caused by shooting. *Id.* at 20.

The Government's attempt to discount the binding effect of *Zuniga-Soto* and *Armijo* is unfounded. First, the *Zuniga-Soto* holding encompasses the crime of violence definition found in 18 U.S.C. § 16, a section that tracks the language of § 924. *Zuniga-Soto*, 527 F.3d at 1124. In *Zuniga-Soto*, the Tenth Circuit reasons that a *mens rea* of recklessness does not satisfy the use of physical force requirement outlined by the Supreme Court in *Leocal*. *Id.* The Tenth Circuit relies heavily on the persuasive reasoning of its sister circuits. Like the Supreme Court in *Leocal*, several of the courts consider the *mens rea* necessary for an offense to constitute crime of violence under § 16. *Id.* The Tenth Circuit merely applies the reasoning from these cases to a slightly different definition of "crime of violence" found in the U.S. Sentencing Guidelines.

The *Armijo* decision cites *Zuniga-Soto* for the proposition that "only those crimes with a mens rea of intent or purpose qualify as crimes of violence." *Armijo*, 651 F.3d at 1234. In *Armijo*, the Tenth Circuit holds that a Colorado manslaughter conviction is not a crime of violence under Sentencing Guideline § 4B1.2. *Id.* at 1237. Under § 4B1.2, a felony involving "conduct that presents a serious potential risk of physical injury" is a crime of violence. *Cf.* § 924 (c)(3) (a felony that by its nature involves "a substantial risk that physical force . . . may be used" is a crime of violence). According to the Tenth Circuit, the language of § 4B1.2 describes "purposeful, violent, and aggressive conduct rather than merely negligent or reckless acts." *Id.* at 1234.

Logic dictates that the level of intent required under § 924 match or exceed the level of intent under § 4B1.2. The risk that "the use of physical force against another might be required" in committing the offense necessarily implies that the offense involves conduct presenting the risk of

7

physical injury to another. In other words, a crime of violence under § 924 must be a crime of violence for the purposes of § 4B1.2. It is impossible that § 924 describes anything less than the "purposeful, violent, and aggressive conduct" targeted by § 4B1.2.

Second, *Zuniga-Soto* and *Armijo* preclude a finding that involuntary manslaughter as defined by 18 U.S.C. § 1112 constitutes a crime of violence even if the offense arises from a shooting. The Government argues that the wanton conduct required to established a conviction under § 1112 is "reckless [conduct] plus" and therefore satisfies the heightened *mens rea* requirement of *Zuniga-Soto*. However, the *Zuniga-Soto* and *Armijo* opinions draw a clear line between reckless and intentional conduct. *See Armijo*, 651 F.3d at 1236 ("[W]e conclude it is simply untenable to read . . . § 4B1.2 as encompassing those . . . crime[s] with a mens rea of recklessness, when this court has unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior."). Reckless, but unintentional conduct, like that covered by the definition of involuntary manslaughter, does not satisfy the use of physical force requirement. If the Government were correct, a drunk driving offense that results in an involuntary manslaughter conviction would constitute a crime of violence. This is the type of conduct the Supreme Court excluded from the definition of crime of violence in *Leocal*. *See Leocal,* 543 U.S. at 7-8 (a conviction for negligently driving under the influence of alcohol thereby causing serious bodily injury is not a crime of violence).

Moreover, the Tenth Circuit does not characterize involuntary manslaughter as a crime requiring an excessively high degree of intent. In the case of involuntary manslaughter, "the offender's mental state is not sufficiently culpable to meet the traditional malice requirements of an intentional or reckless killing." *United States v. Serawop*, 410 F.3d 656, 666 n.7 (10th Cir. 2005). The federal definition of involuntary manslaughter accords with the common law tradition that involuntary manslaughter is "the least serious degree of manslaughter" and is an "offense of negligence." *Id.*

8

Federal case law addressing whether involuntary manslaughter as defined by § 1112 constitutes a crime of violence supports this Court's decision. Prior to *Zuniga-Soto*, the Tenth Circuit expressed doubt whether federal involuntary manslaughter is a crime of violence. *United States v. Bedonie*, 413 F.3d 1126 (10th Cir. 2005) ("[I]it is not clear whether involuntary manslaughter would even qualify as a crime of violence. . ."). In 2012, another New Mexico United States District Court held that *Leocal*, *Bedonie*, and *Zuniga-Soto* "foreclose" the possibility that involuntary manslaughter is a crime of violence. *United States v. Harwood*, 854 F. Supp. 2d 1035, 1057 (D.N.M. 2012). Finally, federal appellate courts outside the Tenth Circuit have held that involuntary manslaughter is not a crime of violence even when the government must establish wanton and reckless conduct. *See Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 447, 449 (4th Cir. 2005) (holding that a Virginia involuntary manslaughter conviction, which required proof of wanton acts showing reckless disregard for the rights of others, was not a crime of violence under 18 U.S.C. § 16), *United States v. Torres-Villalobos*, 487 F.3d 607, 616 (8th Cir. 2007) (holding that *Leocal* is inconsistent with a prior Eighth Circuit decision categorizing federal involuntary manslaughter as a "crime of violence").

The Government argues that the level of intent required to shoot a firearm is higher than the level of intent evident in *Bedonie*. Response at 20. *Bedonie*, *Harwood*, and *Bejarano-Urrutia* involve drunk driving deaths. However, the underlying conduct of the defendant, in this case shooting a gun, is irrelevant to the determination of whether involuntary manslaughter is a crime of violence under § 924. *United States v. Serafin*, 562 F.3d 1105, 1107 (10th Cir. 2009). The Court must employ a "categorical approach," considering "only . . . the statutory definition of the . . . offense." *Id.* There is no inquiry into the specific conduct of the particular offender. *Id.* at 1108.

To conclude, the federal definition of involuntary manslaughter, with its *mens rea* of gross negligence, fails to satisfy the use of force requirement under § 924.

### 3. The Court Committed Plain Error

As the above discussion demonstrates, the Court clearly erred when it instructed the jury that involuntary manslaughter is a crime of violence. An error is plain if it is "clear," "obvious," and contrary to "well-settled law." *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000). In this case, Tenth Circuit precedent forecloses the possibility that involuntary manslaughter is a crime of violence. *Harwood*, 854 F. Supp. 2d at 1057.

Defendant is entitled to relief under the plain error standard because the Court's clear error prejudiced him and seriously affected the fairness and integrity of the trial. At Mr. Mann's trial, the Court incorrectly instructed the jury that involuntary manslaughter was a crime of violence supporting a conviction under 18 U.S.C. § 924. Had Jury Instruction No. 10 contained a correct statement of the law, it would have precluded a conviction on Count 2 based on involuntary manslaughter. Because the law invariably assumes that "jurors follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 206 (1987), a finding of prejudice naturally follows.

Similarly, the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Ruiz-Gea*, 340 F.3d at 1185. Convicting Mr. Mann of violating 18 U.S.C. § 924 (c)(1)(A) when a jury found that he did not commit a predicate offense sufficient to support a conviction under 18 U.S.C. § 924 (c)(1)(A) would unfairly subject Mr. Mann to punishment for a crime he did not commit. It would call into serious question the integrity of the criminal justice system. The Court will grant Mr. Mann relief from the jury verdict convicting him of violating 18 U.S.C. § 924 (c)(1)(A) as described in Count 2 of the Indictment.

### 4. An Order Vacating the Conviction is the Appropriate Form of Relief

The Government argues that Defendant is procedurally barred from the requested relief. The Court can arrest judgment on two grounds: (1) the indictment does not charge an offense or (2) the court does not have jurisdiction over the charged offense. FED. R. CRIM. P. 34. Neither ground is

present in this case.

Defendant alternately requests that the Court order relief by entering a judgment of acquittal. The Court can enter a judgment of acquittal if the evidence, viewed in the light most favorable to the government, is "insufficient to sustain a conviction." FED. R. CRIM. P. 29; *United States v. Reicher*, 983 F.2d 168, 170 (10th Cir. 1992). Each conviction must be assessed separately; an inconsistent jury verdict is not grounds for a judgment of acquittal. *United States v. Powell*, 469 U.S. 57, 67 (1984) (Under Rule 29, "review should be independent of the jury's determination that evidence on another count was insufficient.") (rejecting the argument that acquittal on a predicate offense necessarily indicated that there was insufficient evidence to support the conviction). Defendant does not contend that the evidence was insufficient to convict him of involuntary manslaughter on Count 2. In addition, a motion for a judgment of acquittal is not the correct vehicle to challenge a legal error in the jury instructions.

While neither form of requested relief under Fed. R. Crim. P. 34 or 29 is appropriate in this case, the Court exercises inherent supervisory authority over the proceedings. A court may formulate procedural rules that do not circumvent or conflict with the Federal Rules of Criminal Procedure. *Carlisle v. United States*, 517 U.S. 416, 425-26 (1996). The Court will exercise its authority and treat Defendant's Motion to Arrest as a motion to vacate the conviction under Fed. R. Crim. P. 33.

Providing the Defendant with relief by vacating the conviction[5] does not circumvent the Federal Rules of Criminal Procedure. On July 12, 2013, the jury reached a verdict. Defendant moved

---

[5] Normally, the Court's decision to vacate a judgment is accompanied by an order granting a new trial. In this case, an order granting a new trial would be superfluous. The Government is barred from retrying Mr. Mann on Count 2 of the Indictment. The Court has already held that involuntary manslaughter is not a crime of violence, and a jury has acquitted Mr. Mann of first degree murder, second degree murder, and voluntary manslaughter. Principles of collateral estoppel prevent the Government from reopening the issue of whether Mr. Mann, by shooting Mr. Ames Jim, committed a crime of violence sufficient to support a conviction under 18 U.S.C. § (c)(1).

to arrest judgment fourteen days later on July 26, 2013. Defendant's Motion to Arrest was timely filed under the requirements of Rule 33, a rule which permits the Court to vacate any judgment "if the interest of justice so requires." FED. R. CRIM. P. 33. A motion under Rule 33 may be "grounded on any reason other than newly discovered evidence," including improper jury instructions. *Id.*

### C. Defendant's Second Argument (The Jury was Not Instructed on Discharging a Firearm)

#### 1. Instructing the Jury on the Elements of 18 U.S.C. § 924(c)(1)

Title 18 § 924 describes a base offense, "using or carrying" a firearm during a crime of violence, with escalating mandatory minimums based on the defendant's use of the firearm. If a defendant brandishes a firearm during a crime of violence, the mandatory minimum is 5 years. If a defendant discharges a firearm, the mandatory minimum is 10 years.

Prior to June 2013, the question of whether a defendant brandished or discharged a firearm was not considered an offense element, which must be submitted to the jury. *See United States v. Bowen*, 527 F.3d 1065, 1073 (10th Cir. 2008). Instead, the district court determined at sentencing whether the defendant's conduct constituted brandishing or discharging a firearm and thus warranted a higher mandatory minimum. *Id.* at 1072.  In June of this year, the Supreme Court found this practice unconstitutional. *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) (overruling *Harris v. United States*, 536 U.S. 545 (2002)).

In *Alleyne*, the Supreme Court addressed the brandishing and discharging provisions of § 924 and provided a new rule regarding mandatory minimums.  Any fact that increases the mandatory minimum is an "element" of the crime that must be submitted to the jury and found beyond a reasonable doubt. *Id.* Failing to instruct the jury on the element of discharging a firearm violates the Sixth Amendment right to a trial by jury.

#### 2. The Court Failed to Instruct the Jury on Discharging the Firearm

The Government argues that the jury instructions and jury verdict form, considered as a

whole, properly instructed the jurors on the elements of the offense. When reviewing jury

instructions for error, the Court must "review the instructions as a whole to determine whether the

jury may have been misled." *United States v. Magleby*, 241 F.3d 1306, 1310 (10th Cir. 2001). The

Court will uphold the judgment unless there is "substantial doubt that the jury was fairly guided." *Id.*

Here, the jury verdict form provided a space for the jury to find Defendant guilty or not guilty

of discharging a firearm.  It read: "WE, THE JURY, find the defendant, CLAY O'BRIEN MANN,

_____ of discharging a firearm in furtherance of an act of violence." However, the jury

instructions did not include discharging the firearm as an element of the offense.

The jury instructions directed the jury to focus on whether Mr. Mann "used" the firearm.

When it listed the elements of the offense, the Court instructed the jury that it could find the

defendant guilty if the defendant used or carried a firearm. Moreover, in its reference to the

indictment the Court described 18 U.S.C. § 924 (c)(1)(A) as a law criminalizing the use of a firearm

during a crime of violence. Jury Instructions, Instruction No. 10 ("The defendant is charged in Count

2 of the indictment with a violation of Section 924 (c)(1) of Title 18, United States Code. This law

makes it a crime to use a firearm during and in relation to any crime of violence for which a person

may be prosecuted in a court of the United States.").[6]

Taken as a whole, the instructions did not inform the jury that discharging the firearm was an

element of the offense. Although the verdict form, which was prepared for the jury's convenience,

included the term "discharging," it is reasonably possible that the jury overlooked the word and

guided by the jury instructions never deliberated about this element. The solitary reference to

discharging cannot dispel the Court's substantial doubt that the jury was fairly guided.

---

[6]The Court used the Tenth Circuit Pattern Jury Instructions. Jury Instruction  2.45.

**3. The Court's Error did not Prejudice the Defendant**

Although the Court erred in failing to instruct the jury that discharging a firearm was an element of the offense, Defendant is not entitled to relief because he suffered no prejudice because of the error. *See United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (if any part of the plain error analysis is not satisfied, relief is foreclosed and the other parts of the analysis "need not be addressed"). It is highly unlikely that the jury verdict would have differed had the jury been properly instructed that discharging was an element of 18 U.S.C. § 924, because Defendant never contested that he fired shots.

In addition, the jury's decision to convict Mr. Mann of involuntary manslaughter "effectively embrace[d]" the element of discharging a firearm. *See Cal. v. Roy*, 519 U.S. 2, 7 (1996) (Scalia, J., concurring) (explaining that the omission of an element of the offense is harmless "if it is impossible, upon the evidence, to have found what the verdict did find without finding [the omitted] point as well"). At the trial, the Government's witness, Dr. Paul, testified that the cause of death of the victim, Mr. Ames Jim, was a gunshot wound to the chest. *See* TRANSCRIPT OF JURY TRIAL, DAY 2 AND DAY 3 (Doc. No. 126). His testimony was never controverted. The jury found that Defendant caused the death of Mr. Ames Jim when it convicted him of involuntary manslaughter. It is not reasonably probable that the same jury could find that Mr. Mann did not discharge a firearm in the course of killing Mr. Jim.

IT IS ORDERED that DEFENDANT'S MOTION TO ARREST JUDGMENT (Doc. No. 119):

1. Is denied with respect to his conviction on Count 5 of the Indictment.

2. Is granted with respect to his conviction on Count 2.

_____

SENIOR UNITED STATES DISTRICT JUDGE